k5s2IzhC kjc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                    New York, N.Y.

            v.                               20 Cr. 161 (MKV)

SARAH IZHAKI,
ASHLEY LEBOWITZ,

                Defendants.

------------------------------x              Teleconference
                                             Arraignment


                                             May 28, 2020
                                             11:00 a.m.


Before:

                    HON. MARY KAY VYSKOCIL,

                                             District Judge




                         APPEARANCES

GEOFFREY S. BERMAN
        United States Attorney for the
        Southern District of New York
BY:  ANDREW C. ADAMS
        BENET J. KEARNEY
        SARAH MORTAZAVI
        Assistant United States Attorneys

RICHARD B. LIND
JACOB B. MITCHELL
        Attorneys for Defendant Izhaki

JESSE M. SIEGEL
        Attorney for Defendant Lebowitz

1          (Case called)

2          THE DEPUTY CLERK:  Starting with the government,

3  counsel, please state your name for the record.

4          MR. ADAMS:  Good morning, your Honor.  This is Andrew

5  Adams with the government, and I am joined today by my

6  colleagues Benet Kearney and Sarah Mortazavi.

7          THE COURT:  Good morning all.

8          MR. ADAMS:  Good morning.

9          MR. LIND:  Good morning, Judge.  This is Richard Lind,

10  one of the lawyers for Sarah Izhaki.

11          THE COURT:  Good morning, Mr. Lind.

12          MR. MITCHELL:  And with Mr. Lind, Judge, Jacob

13  Mitchell.

14          THE COURT:  I would request that people please mute

15  their phone unless they are speaking.

16          Mr. Mitchell, you are for Ms. Izhaki as well, right?

17          MR. MITCHELL:  Yes, your Honor.

18          THE COURT:  All right.  Thank you.

19          And for Ms. Leibowitz.

20          MR. SIEGEL:  Good morning, Judge.  Jesse Siegel for

21  Ms. Leibowitz.

22          THE COURT:  Good morning.

23          Anyone else who wishes to enter an appearance?

24          All right.  We have a court reporter, Ms. Carannante,

25  on the phone with us?

k5s2IzhC kjc

| | |
|---|---|
| 1 | THE COURT REPORTER:  That's correct.  Good morning, |
| 2 | your Honor. |
| 3 | THE COURT:  Good morning to you.  Thank you very much |
| 4 | for being here.  I know it is difficult all the time, but when |
| 5 | we are doing conferences remotely with multiple parties, it |
| 6 | becomes increasingly difficult for the court reporter. |
| 7 | So I would, again, ask people to please mute your |
| 8 | phones if you are not speaking.  When you are going to address |
| 9 | the Court, please announce yourself by name, and please speak |
| 10 | slowly so that we can get a good and clear record here.  All |
| 11 | right? |
| 12 | So good morning, everybody.  As I said, I'm |
| 13 | Judge Vyskocil. |
| 14 | Defendants have been named in a two-count indictment, |
| 15 | numbered 20 Cr. 161, which charges conspiracy to commit drug |
| 16 | adulteration and misbranding, in violation of U.S. Code, Title |
| 17 | 18, Section 371, and smuggling, in violation of Title 18, |
| 18 | Section 545 and 2.  It has been assigned to me. |
| 19 | Before we go any further, let me just ask, are either |
| 20 | of the defendants on the phone? |
| 21 | MR. SIEGEL:  Judge, this is Jesse Siegel, and |
| 22 | Ms. Leibowitz is not on the phone. |
| 23 | THE COURT:  All right. |
| 24 | MR. LIND:  Judge, this is Richard Lind for Ms. Izhaki. |
| 25 | She is not on the phone. |

k5s2IzhC kjc

1          THE COURT:  All right.  Thank you.

2          So let me just make a record of the fact that,

3  obviously, before we get into the substance of today's hearing,

4  I want to just address the fact that we are proceeding

5  remotely.  As everybody is well aware, we are in the midst of

6  the COVID-19 pandemic, and I am conducting this proceeding

7  telephonically pursuant to the authority provided in the CARES

8  Act, specifically Section 15002, and the standing orders issued

9  by our chief judge pursuant to that act.  Counsel are appearing

10  by telephone.  The defendants have elected not to participate.

11  I have received from counsel for each of the defendants a

12  waiver of the defendants' rights to appear at and participate

13  in person in open court at their arraignment and consent, as

14  well, for us to proceed remotely, including telephonically, in

15  lieu of a video hearing.

16          Is that correct?  Let me ask, first, Mr. Lind.

17          MR. LIND:  Yes, Judge.  That's correct.

18          THE COURT:  All right.

19          Mr. Siegel for Ms. Lebowitz?

20          MR. SIEGEL:  Yes, that's correct, Judge.

21          THE COURT:  All right.  Thank you.

22          So as I said, everybody mute your phone.  I keep

23  hearing some kind of feedback from somebody's phone, so please

24  mute your phones until and unless you are speaking to me.  When

25  you do speak, announce who is speaking and, as a reminder, this

k5s2IzhC kjc

1    proceeding, as are all proceedings, is open to the public and

2    to the press.  The dial-in for people to, in quotes, attend the

3    hearing was posted on the court's docket.  If anybody is on the

4    call from the press or otherwise, I would remind you that you

5    are prohibited from recording any court proceedings.

6          So let me just begin with the waivers that I have

7    received.  Pursuant to Rule 43 of the Federal Rules of Criminal

8    Procedure, defendants have a right to appear in person at this

9    arraignment.  As I said, I have received a written waiver of

10   each defendant's right to be present here today, both their

11   right to have an in-court proceeding and their right to

12   participate even remotely in this telephonic arraignment and

13   conference that we are conducting.  I want to just confirm with

14   defense counsel, before we jump into the arraignment and the

15   conference, that defendants were in fact advised of their

16   rights to appear at this arraignment, that they understood

17   those rights, and that they knowingly and voluntarily gave up

18   those rights.

19         So let me address, in turn, first counsel to

20   Ms. Izhaki.

21         MR. LIND:  Yes, Judge.

22         THE COURT:  Mr. Lind, let me ask you a few questions

23   that you can answer, all right?

24         First, can you describe to me how the document that

25   you sent to me, the waiver form, was provided to Ms. Izhaki and

k5s2IzhC kjc

1    the circumstances, not the substance of your conversation,

2    obviously, but the circumstances under which you discussed it

3    with her.

4              MR. LIND:  Well, I and my co-counsel, Jacob Mitchell,

5    sent it to her, and we reviewed it after -- we reviewed it line

6    by line with her, and she agreed to sign it, and that was her

7    intention.

8              THE COURT:  All right.  So you explained to her that

9    she had a right to be present in court for her arraignment?

10             MR. LIND:  Yes, Judge.

11             THE COURT:  And you explained that she had a right to

12   participate remotely?

13             MR. LIND:  Yes, Judge.

14             THE COURT:  All right.  You believe, based on that

15   conversation, that Ms. Izhaki understood that right?

16             MR. LIND:  Yes, your Honor.

17             THE COURT:  And it is your belief and understanding

18   that she voluntarily and knowingly gave up that right, correct?

19             MR. LIND:  Yes, your Honor.

20             THE COURT:  All right.  And you were able to

21   communicate with her without the assistance of an interpreter,

22   right?

23             MR. LIND:  That's correct.

24             THE COURT:  Can you just tell me, how did you obtain

25   her signature on the document?  Well, is that in fact her

1    signature on the document; and, if yes, how did you obtain that

2    signature?

3              MR. LIND:  At this point, Judge, I will turn it over

4    to Mr. Mitchell to address that.

5              THE COURT:  That would be fine.

6              Mr. Mitchell.

7              MR. MITCHELL:  Yes.  Jacob Mitchell speaking.

8              Your Honor, she printed the document, signed it,

9    scanned it, and then e-mailed the document back to me with her

10   signature.

11             THE COURT:  Okay.  All right.  I find, based -- oh,

12   and I'm sorry, one final question, counsel.  That is your

13   signature on the documents that you sent to me?

14             A VOICE:  Yes, your Honor.

15             THE COURT:  And who was that?

16             MR. MITCHELL:  Jacob Mitchell.

17             THE COURT:  All right, Mr. Mitchell.  Thank you.

18             So in light of the answers that I received from

19   counsel for Ms. Izhaki, I find that she was informed of her

20   right to attend her arraignment proceeding and to be present in

21   person, her right to have that proceeding in court, not merely

22   telephonically, but that she also waived her right to

23   participate in the conference after agreeing that we could hold

24   it remotely.  So I find, pursuant to Rule 10(b) of the Federal

25   Rules of Criminal Procedure, that Ms. Izhaki has knowingly and

k5s2IzhC kjc

1  voluntarily waived these rights.

2          Let me turn to counsel for Ms. Lebowitz.  Sir, did you

3  hear the series of questions I went through with counsel to

4  Ms. Izhaki?

5          MR. SIEGEL:  This is Jesse Siegel.

6          Yes, I did.

7          THE COURT:  Okay.  So can you explain to me the

8  process by which you provided the waiver to Ms. Lebowitz,

9  whether you explained her rights to her, how you obtained

10  her -- is that her signature, and how did you obtain it?

11          MR. SIEGEL:  I -- again, Jesse Siegel speaking.

12          I explained to her her right to be present, to have a

13  court hearing, and that she could be present for the telephonic

14  conference.  And I e-mailed to her the form that your Honor has

15  in front of you right now, and she signed it and returned it to

16  me, and that is my signature on it.

17          THE COURT:  All right.  Thank you very much.

18          And you do believe, based on your interaction with

19  your client, that she has voluntarily -- she understood her

20  rights and she has knowingly and voluntarily agreed to waive

21  those rights, right?

22          MR. SIEGEL:  Correct.

23          THE COURT:  All right.  Thank you.

24          So I do find, in light of the answers provided by

25  Mr. Siegel with respect to his interaction with his client,

1    Ms. Lebowitz, that Ms. Lebowitz was informed of her right to

2    attend her arraignment in person, her right to have that

3    proceeding take place in a courtroom, and not merely

4    telephonically.  She was also informed of her right to

5    participate in this telephonic remote proceeding and consented

6    in fact to having this proceeding happen telephonically and

7    remotely.  Pursuant to 10(b), I find that Ms. Lebowitz has

8    knowingly and voluntarily waived her right, and I do accept the

9    waiver that has been filed on the docket on behalf of both

10   Ms. Izhaki and Ms. Lebowitz.

11           So let's turn, then, to the arraignment, which is the

12   purpose for our gathering today.  In the waiver that I

13   received, each of Ms. Izhaki and Ms. Lebowitz have recited that

14   they received a copy of the indictment, that they discussed it

15   with their lawyers, that they waived a public reading, and that

16   they wished to enter a plea of not guilty to the charges in the

17   indictment.

18           Mr. Lind, is that correct with respect to Ms. Izhaki?

19           MR. LIND:  Yes, Judge, that's correct.

20           THE COURT:  All right.  So I will enter a plea of not

21   guilty to the charges against Ms. Izhaki.

22           Mr. Siegel with respect to Ms. Lebowitz, is it correct

23   that she has --

24           MR. SIEGEL:  Yes, Judge.

25           THE COURT:  -- received it, you discussed it with her,

1    she waives its public reading, and she wishes you to instruct

2    that a plea of not guilty be entered?

3           MR. SIEGEL:  Yes, Judge, that's correct.

4           THE COURT:  All right.  So a plea of not guilty will

5    be entered on behalf of Ms. Lebowitz.

6           Let's talk now about the case and moving it forward.

7           Why don't I hear -- who would like to be heard on

8    behalf of the government to talk to me a bit about the nature

9    of the case and the status of the matter?

10          MR. ADAMS:  Hi, your Honor.  This is Andrew Adams for

11   the government.

12          THE COURT:  Thank you, Mr. Adams.

13          MR. ADAMS:  So just by way of quick background on the

14   case, your Honor, in summarizing the indictment, summarized

15   much of the substance for this case as well.  This is one of

16   the four cases arising out of the F.B.I.'s investigation into

17   the use of performance-enhancing drugs for the purpose of

18   cheating in professional horseracing.  Your Honor is aware of

19   the Navarro case that is before you.  There are two other cases

20   before two other judges in the district as well.

21          This case is, plainly, much more limited in scope,

22   both in terms of the number of defendants and the time periods

23   charged with respect to the two counts in this indictment.  The

24   activity here focuses on the distribution by Ms. Izhaki and

25   Ms. Lebowitz of Epogen or, in this case, essentially an

1    analogue or other version of Epogen produced by a Mexico-based

2    pharmaceutical company that does not operate in the United

3    States, cannot import into the United States, and the drugs

4    that were being sold by the defendants were smuggled into the

5    United States for the purpose of subsequent sale in this case

6    to a number of different horse trainers.  Much of the evidence

7    in the case came from a series of interactions by a

8    confidential source and essentially an undercover officer

9    directly with Ms. Izhaki and Ms. Lebowitz.

10          And with that as background, I can speak for a moment

11   about the nature of the discovery, because it largely overlaps

12   with that undercover and covert investigation.

13          THE COURT:  The detail that you have just gone through

14   with me is all set forth in the indictment.

15          In terms of the discovery, I expect it is a bit more

16   narrow than we talked about in the Navarro case, right?

17          MR. ADAMS:  That is absolutely right.  In fact, your

18   Honor previously signed a protective order in the case and, as

19   a result, we have already handed over substantially --

20   certainly the bulk of the discovery in the case has already

21   been produced.  I will talk about what has been produced and

22   what remains to be produced.

23          THE COURT:  Okay.

24          MR. ADAMS:  So the most -- sort of the core evidence

25   in the government's view are the recordings and surveillance

1    photographs and reports from the undercover and confidential

2    source interactions with the two defendants.  Those include

3    audio recordings of meetings.  The meetings last for up to an

4    hour.  Occasionally these are very short phone calls.  So we

5    are not talking about hundreds of hours of recordings, as we

6    are in the Navarro case.  There was no Title III in this case.

7    These are all consensual recordings.

8            THE COURT:  I'm sorry.  I didn't hear you.

9            MR. ADAMS:  These are all consensual recordings by a

10   source or undercover.  There are phone calls, but they are also

11   by either the source or the undercover.  There is no Title III

12   interception in this case.

13           THE COURT:  Thank you.  I just couldn't hear you.

14           MR. ADAMS:  No.  No problem.  I'm sorry.  I will speak

15   up.

16           There are a handful of warrants and other things that

17   gave rise to the Fourth Amendment events that will be the

18   subject for potential motions or contemplated motions,

19   including some warrants for historical and prospective

20   geolocation information from the cell phones relating to these

21   two defendants.  And then at the time of the arrest on March 9,

22   there was a warrant executed at a New Jersey residence signed

23   by a magistrate in New Jersey.  That's the Izhaki residence,

24   where both defendants were residing.

25           From that search, we have collected a number of

1   photographs, a number of documents that have been scanned.

2   Those have been produced.  We also collected a series of

3   electronic devices, not an overwhelming number of electronic

4   devices in this case.  There are two cell phones that we

5   believe are associated with Ms. Izhaki, one associated with

6   Ms. Lebowitz, one hard drive, a Mac computer, and an electronic

7   or digital camera, all of which were seized pursuant to the

8   warrant, and the warrant covers the search of electronic

9   devices in the house.  So we are in the process of searching

10  those devices.

11          One of the devices has already been downloaded and is

12  ready to be produced.  The others are still in the queue and we

13  are aiming to get those devices searched, downloaded, and

14  produced within the next month, if that is a time frame that is

15  acceptable to the Court.

16          We did have discussions with defense counsel yesterday

17  and the day before and have a proposal for a timeline and a

18  future conference that I can address in a moment if the Court

19  would like to hear it.

20          With respect to just the end of discovery, there are

21  some grand jury subpoena returns that will be going out to the

22  defendants.  Those are principally travel records and bank

23  account records, and then finally there is a postarrest

24  statement by Ms. Izhaki.  There was no postarrest statement by

25  Ms. Lebowitz.  And the audio for the Izhaki postarrest is

1    already produced and available to defense counsel.

2                    THE COURT:  Okay.

3                    MR. ADAMS:  That is the, in sum, the most substantial

4    portions of discovery in the case.  There may be a handful of

5    additional documents here and there, but that covers 99 percent

6    of it.

7                    THE COURT:  All right.  Does counsel for either of the

8    defendants wish to be heard at this point with respect to any

9    issues relating to discovery?

10                   MR. SIEGEL:  None from Jesse Siegel on behalf of

11   Lebowitz.

12                   THE COURT:  All right.

13                   A VOICE:  Not for Ms. Izhaki.

14                   THE COURT:  That was Mr. Lind?

15                   MR. LIND:  Yes.

16                   THE COURT:  All right.  Thank you.

17                   All right.  So Mr. Adams, you said to me that you and

18   defense counsel have spoken and have a proposal with respect to

19   discovery, is that correct?

20                   MR. ADAMS:  That's right, your Honor, and a proposal

21   for next steps generally.

22                   As I mentioned, we think that it will take about a

23   month to download, search, and then reupload the electronic

24   devices in the case for production to the defendants.  We will

25   talk with defense counsel about this, but we just need to

1    obtain some hard drives to upload that to.  But we think a

2    month is about as long as we would need to get that out to

3    defense counsel, at which point discovery in the case will be

4    complete.

5        The proposal for the Court at this point, given that

6    there are a handful of items that may be the subject of

7    contemplated motions -- the search of the residence, the cell

8    site information, the postarrest statement -- it would be to

9    reconvene in approximately three months to discuss a schedule

10   for any motions, and if the Court wants to set further

11   deadlines in terms of trials, to do that in about three months.

12       For further context and background, the parties are

13   already in some discussions about potential pretrial

14   resolutions, and we are hopeful that in the time between now

15   and the three months we may actually be able to resolve the

16   case.

17       THE COURT:  All right.  Mr. Lind or Mr. Siegel, do you

18   wish to be heard on the proposal with respect to timing?

19       MR. SIEGEL:  Your Honor --

20       MR. LIND:  Your Honor --

21       THE COURT:  Who is speaking, please?

22       MR. LIND:  I'm sorry.  This is Richard Lind on behalf

23   of Ms. Izhaki.

24       I have no problem with the government's schedule.  My

25   only potential issue would be that from August 10 through

k5s2IzhC kjc

1  almost the end of August my wife and I will be out of town, so

2  to speak.  We will not be in the New York area.  I guess I

3  could participate by a telephonic way, but alternatively,

4  Mr. Mitchell could stand in for me.

5       THE COURT:  All right.  But in terms of the time frame

6  that's contemplated -- we will talk in a minute about fixing a

7  precise date, but does three months seem to you to be

8  sufficient time for you to receive the discovery?  So counsel

9  has said he needs about a month to get it to you.  So that

10  would then leave you two months to review it and be prepared to

11  discuss with the Court whether there will be any motion

12  practice and, if not, talk about scheduling a trial.

13       MR. LIND:  Yes, Judge.  This is Richard Lind, once

14  again, speaking on behalf of Ms. Izhaki.

15       That would be sufficient.

16       THE COURT:  All right.

17       And how about Mr. Siegel for Ms. Lebowitz?

18       MR. SIEGEL:  Judge, I believe that's sufficient as

19  well.

20       THE COURT:  All right.  Look, Monday is June 1.  So,

21  Mr. Lind, you are talking about being unavailable during the

22  month of August, but Monday being June 1, three months out puts

23  us into September, I believe, right?

24       Is what you are proposing, Mr. Adams?

25       MR. ADAMS:  Yes, your Honor.  Sorry, I was on mute,

k5s2IzhC kjc

1   but yes.

2              THE COURT:  No, I appreciate that.  Thank you.

3              All right.  So let me ask my colleagues who are on the

4   phone to take a look at the calendar for September, and they

5   can e-mail with me about availability in terms of dates.

6              And in the meantime -- I will circle back to that, but

7   in the meantime let me ask the government, what is the status

8   of the Speedy Trial clock?

9              MR. ADAMS:  Your Honor, we are excluded through today,

10  and we will ask that it be excluded through the date of the

11  conference once it is set in order to give defense counsel time

12  to review discovery and to consider any possible motions.

13             THE COURT:  All right.  And both defendants are out on

14  bail conditions, right?

15             MR. ADAMS:  That is correct, your Honor.

16             THE COURT:  I assume there is no proposed change in

17  their status.

18             MR. ADAMS:  No proposal from the government.

19             THE COURT:  All right.  Anything from defense counsel?

20  I assume not.

21             MR. LIND:  This is Richard Lind on behalf of

22  Ms. Izhaki, your Honor.

23             I think that the proposal is fine for the dates set,

24  and I have no objection to -- that the Speedy Trial clock be

25  waived pending our next conference.

k5s2IzhC kjc

1       THE COURT: All right. Thank you, counsel, but my

2    question to you was whether you have anything for me with

3    respect to the bail status of your client, and I'm assuming

4    not, since she is out on --

5       MR. LIND: No, no, not at all, no.

6       MR. SIEGEL: And Jesse Siegel on behalf of

7    Ms. Lebowitz.

8       No, we have no objection to continuing the same bail

9    conditions.

10       THE COURT: All right. Thank you.

11       Mr. Adams, do you anticipate any superseding

12    indictment, either adding charges or adding defendants at this

13    stage?

14       MR. ADAMS: Your Honor, if we were to get closer to

15    trial, there is a possibility that we would seek to supersede

16    with respect to the smuggling charge to add what is essentially

17    a sentencing enhancement for the use of a cross-border tunnel,

18    but that's not something that we plan to do imminently, and

19    it's nothing that we think is likely to be something that we

20    will do if we are moving towards a resolution.

21       THE COURT: Okay. And then just to make sure we are

22    covering all of our bases, are there identifiable victims here

23    and do you have processes in place to notify the victims of

24    events and court dates pursuant to the Crime Victims Rights

25    Act?

1          MR. ADAMS:  Your Honor, we have that in mind in this

2    case.  For the moment at least, the victims with respect to

3    these two defendants are not identified.

4          THE COURT:  Okay.  All right.  In terms of a schedule,

5    Mr. Lind, you said you are away for all of August, right?

6          MR. LIND:  Your Honor, I am away for the last three

7    weeks of August.  I believe I leave on the 10th and come back

8    on the 28th.

9          THE COURT:  All right.  So Labor Day is Monday,

10   September 7, it looks like, so how is September 9 for people?

11         MR. LIND:  Your Honor on behalf -- this is Richard

12   Lind speaking.

13         That's okay with me.

14         MR. SIEGEL:  And this is Jesse Siegel.

15         The 9th is fine, Judge.

16         THE COURT:  Mr. Adams, for you and your colleagues?

17         MR. ADAMS:  That's good, your Honor.  Thank you.

18         THE COURT:  So I will set the next conference in this

19   case for Monday, September 9, at which time I will expect the

20   defendants to be prepared to tell me whether you have any

21   motions that you are intending to file, and I will set a

22   schedule at that conference for any motions addressed to

23   discovery.

24         I will tell you, frankly, I think, you know, this is a

25   little bit of a long time period.  Normally I would say file

k5s2IzhC kjc

1    the motions by September 9.  But given the circumstances under

2    which we are all operating, I'm prepared to adopt the operating

3    schedule that you have all proposed to me.

4         We will reconvene on September 9 at which time I will

5    set a schedule for any motions and set a firm trial date.  Keep

6    in mind that the schedule for any motions is going to be soon

7    after September 9.  I'm not intending that we are going to get

8    together on September 9 and then I'm going to set a motion

9    schedule many months out.  All right?

10        All right.  So, Mr. Adams, does the government seek to

11   exclude time, then, under the Speedy Trial Act?

12        MR. ADAMS:  Yes, your Honor, for the reasons

13   previously set forth on the record.

14        THE COURT:  All right.  And is there any objection

15   from defense counsel?

16        Mr. Lind?

17        MR. LIND:  No, your Honor.  On behalf of Ms. Izhaki,

18   there is no objection.

19        THE COURT:  All right.

20        Mr. Siegel, on behalf of Ms. Lebowitz?

21        MR. SIEGEL:  No, Judge.  I'm sorry.  Did I miss it?

22   Did you set a time on the 9th?

23        THE COURT:  Oh, I'm sorry.  I did not.  Thank you.  11

24   a.m.?  Does that work for everyone?

25        MR. LIND:  Yes, your Honor.  This is Richard Lind on

k5s2IzhC kjc

1   behalf of Ms. Izhaki.

2           MR. SIEGEL:  And this is Jesse Siegel.

3           That's fine, Judge.

4           THE COURT:  Mr. Adams?

5           MR. ADAMS:  That is good for the government.  Yes,

6   your Honor.

7           THE COURT:  Terrific.  So September 9 at 11:00.  We

8   will get something on the docket to that effect.

9           I do find that the ends of justice served by excluding

10  time in order to allow for the completion of discovery that has

11  been outlined by the government and reviewed by the defendants

12  and to allow time for the defendants to review that discovery

13  with their clients, to consider it, and to analyze whether

14  there will be any motions addressed to discovery, and

15  additionally to allow time for the parties to negotiate --

16  Mr. Adams's alluded to the fact that there had been some

17  discussions, so to allow the parties to continue those

18  discussions with regard to a potential resolution of this

19  matter, all of those factors, based on all of those factors, I

20  find that the ends of justice served by excluding time until we

21  next convene on September 9 outweigh the interests of the

22  public and the defendant in a speedy trial, and I will

23  therefore exclude all time from today through September 9 under

24  the Speedy Trial Act.

25          All right.  Is there anything else that we should

k5s2IzhC kjc

1  discuss today?

2        MR. ADAMS:  Your Honor, not from --

3        MR. LIND:  Not from --

4        MR. ADAMS:  -- the government.  Thank you.

5        THE COURT:  Mr. Adams.

6        MR. LIND:  Nothing from -- I'm sorry, I apologize,

7  Judge.

8        MR. SIEGEL:  Nothing on behalf of --

9        THE COURT:  Mr. Lind.

10        Mr. Adams, anything further?

11        MR. ADAMS:  Nothing further, your Honor.  Thank you.

12        THE COURT:  Thank you.

13        Mr. Lind.

14        MR. LIND:  I apologize, Judge.  No, there is nothing

15  further.

16        THE COURT:  All right.  Thank you.

17        Mr. Mitchell, did you have anything?

18        MR. MITCHELL:  No, your Honor.  Nothing further.

19  Thank you.

20        THE COURT:  All right.

21        And Mr. Siegel.

22        MR. SIEGEL:  Nothing further.  Thank you, Judge.

23        THE COURT:  All right.  Thank you all very much.  We

24  are adjourned.  Everybody please be safe and stay well.

25        MR. ADAMS:  Thank you, your Honor.

k5s2IzhC kjc

1          MR. LIND:  Thank you, Judge.

2          MR. SIEGEL:  Thank you, your Honor.

3          MR. MITCHELL:  Thank you, your Honor.  Have a good

4     day.

5          THE COURT:  You as well.

6                              oOo

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25