**RICHARD B. LIND, ESQ.**
Attorney at Law
575 Lexington Avenue – 4th Floor   New York, NY 10022
Cellphone: (917) 747-9603  Email: rlind@lindlawyer.com

May 24, 2021

**By ECF**

Hon. Mary Kay Vyskocil
United States District Judge
U.S. Courthouse
500 Pearl Street
New York, NY  10007

      Re:   United States v. Sarah Izhaki
            20 Cr. 161 (MKV)

Dear Judge Vyskocil:

     This letter is submitted on behalf of Defendant Sarah Izhaki ("Sarah" or "Ms. Izhaki"), who is scheduled to be sentenced by this Court on June 7, 2021. For the reasons stated herein, we submit that the Court should impose a term of time served with forfeiture for the amount of $20,000 and a term of three-years supervised release.

**BACKGROUND**

     A one-count superseding information S1 20 Cr. 857 (MKV) was filed on September 16, 2020. It alleged that from February 2018 through November 2019, Sarah conspired with others to adulterating and misbranding a pharmaceutical drug in violation of 21 U.S.C. §§ 331 and 333(a)(2). On September 16, 2020, Sarah pled guilty to that charge and accepted responsibility before this Court. PSR ¶¶ 1-4.

     In accordance with the written plea agreement between the parties, the Base Offense Level was 16. Three levels were deducted because Sarah accepted responsibility and pled guilty in a timely fashion. As a result, Sarah's Offense Level is 13, which, combined with Sarah's Criminal

1

History Category of I, having no prior criminal record, results in a Guidelines sentencing range of 12 to 18 months' imprisonment. *Id.* ¶ 4.

## STATEMENT OF THE FACTS

### A. Sarah's Offense Conduct

Professional horse racing is a lucrative industry, and is therefore subject to an array of federal and state regulations aimed at protecting participating horses and ensuring fair competition, including proscription of performance-enhancing drugs ("PEDs"). PSR ¶¶ 8-9.

Sarah supplied a PED by the brand name of Epogen or "Epo," which boosted a racehorse's red blood cell count in order to simulate endurance-enhancing during a race. Sarah obtained the Epo they distributed from a Mexican-based firm ("Firm-1") which operated without a license to import drugs into the United States. Sarah also offered, but never sold nor was found to have, a "masking" substance designed to conceal the presence of illicit drugs. PSR ¶¶ 8-13.

On September 24, 2019, Sarah sold ten vials of the Firm-1 Drug to a confidential source posing as a horse trainer ("CS-1"). Sarah explained to CS-1 that she and others covertly transported into the United States. On October 17, 2019, CS-1 called Sarah and arranged to purchase $5,000 worth of the Firm-1 Drug. During that call, Sarah described another drug, which she referred to as "the Devil" – a "masking agent." Finally, on October 24, 2019, Sarah distributed 24 vials of the Firm-1 Drug to an undercover agent ("UC-1") posing as a horse owner. PSR ¶ 14.

### B. Sarah's History, Physical Condition and Mental Health; Substance Abuse; Education and Employment

Sarah was born Sarah Peregrina on December 31, 1974 in Mexico, one of six children born to Teofilo Moises Peregrina (deceased), who died of a heart attack, and Lorena Peregrina, born Cortez, age 67, who resides in Monta Rey, Mexico, and was formerly a nurse. PSR ¶ 40.

Sarah has seven siblings. Patricia Peregrina, age 60, lives in Texas; Jose Peregrina, in his 50's, lives in Brooklyn; Javier Peregrina, also in his 50's, resides in Texas. Sarah has not spoken to her brothers in about thirty years. Martha Vega resides in Houston, Texas and is a housewife. Daniel Peregrina, 44 years old, also resides in Texas and is employed in the oil industry. Sarah had a brother who died when he was eight. *Id*. ¶ 41.

Sarah attended a "finishing school" as a child. She reported no drug abuse or drug use in the home. When she was with her parents, Sarah advised that they traveled to many foreign countries. Sarah married Joseph Valdez in Mexico when she was fourteen years old, and he was twenty-eight years old. This was an arranged marriage by her father in which he wanted Sarah to marry someone of Jewish faith; but Sarah did not like it. Sarah had a daughter when she was 16, Leah Tulino, age 26, an aesthetician. Sarah informed Probation that she did not like the marriage, and she divorced when she was sixteen. She does not have contact with Mr. Valdez, nor does her daughter. *Id.* ¶ 43.

Sarah immigrated to the United states with her parents, Joseph Valdez and daughter when she was sixteen, principally to undergo cornea transplant surgery. At that time, her family operated a cheese and meat factory in Brooklyn called Peregrina Cheese Factory, which is now closed. Sarah was naturalized in February 2013. *Id.* ¶ 44.

Sarah married Michael Lebowitz when she was 21 years old in Brooklyn. She met Mr. Lebowitz through a mutual friend. He was 44 and is twenty-three years older than Sarah. The marriage produced one child (co-defendant) Ashley Lebowitz, a teacher who resides in New Jersey. Eventually Sarah and Mr. Lebowitz divorced, because, according to Sarah,

3

he had a "different sexual preference." Sarah married Izhak Izhaki in 2012. He operates a produce company. The two divorced in 2016. *Id.* ¶¶ 45-46.

Sarah presently resides in Manalapan, New Jersey with a caretaker. An interview with Sarah's daughter, Leah Tulino, verified Sarah's account. Moreover, she expressed how her mother "is an amazing parent who had made sacrifices and dedicated her life to her children." She noted that Sarah is kind, intelligent and hilarious. ¶¶ 47-48

Sarah is medium height and weight. She has problems with her eyesight and became legally blind at the age of 14. In 1995, at the age of 22 she underwent surgery on her right eye. Since her initial transplant surgery she has undergone additional transplants in each eye for a total of eight cornea transplant surgeries. The effects are temporary resulting in additional surgeries. PSR ¶¶ 49-50.

Sarah reported having several heart attacks but could not recall the dates; she was treated at a small hospital in Brooklyn, New York. In May 2019, Sarah was involved in a major car accident; she reportedly stayed in various hospitals for almost one year. As a result, she has had major surgeries. *Id.* ¶¶ 51-52. Sarah was involved in another serious car accident during the pending of this case. She has undergone additional extensive surgeries.

In May 2020, Sarah attempted suicide by making extra pain medication because she was depressed and could no longer deal with the chronic pain. She is better now. She can no longer take the therapy sessions. PSR ¶¶ 53-55. Sarah no longer takes drugs. But reportedly she took medical marijuana for depression but stopped while on probation. PSR ¶¶ 56-57.

Sarah attended Colegio de Senoritas de Linda Vista in Chiapas, Mexico from age 6 to 14. She reportedly graduated and received a diploma from this Colegio. In addition to regular studies, she was groomed to be a wife. She attended the University of Montemorelos in Nuevo Leon, Mexico, at age 16, but could not complete due to her eyesight. Sarah is fluent in English and Spanish and speaks six other languages. *Id.* ¶¶ 58-60.

Sarah reported being employed for Fourth Floor modeling agency in Manhattan from the ages of seventeen to thirty. She booked jobs modeling

clothing, earning $250 per hour. During the same time period Sarah reported being supported by Mr. Lebowitz. From 2014 to 2019, Sarah cleaned houses of women she knew from synagogue. PSR ¶¶ 62-63

Sarah is presently unemployed due to her health issues. She receives financial support from her ex-husband Michael Lebowitz in the amount of $350 per week. The payments began when they divorced. Another ex-husband pays her car insurance and utility bills. *Id.* ¶ 61.

## THIS COURT SHOULD IMPOSE A SENTENCE OF TIME SERVED FOLLOWED BY A THREE-YEAR TERM OF SUPERVISED RELEASE

We submit that, for several reasons, Sarah should be sentenced to a term of imprisonment of time served and forfeiture of $20,000. A Three-year term of supervised release or home confinement can achieve the goals of sentencing.

### A. *Pepper and* Its Progeny

In *Pepper v. United States*, 562 U.S. 476 (2011), the Supreme Court twice emphasized that a sentencing judge assumes "an overarching duty under §3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in §3553(a)(2)." *Id.* at 491. It is axiomatic that, post-*Pepper*, sentencing courts retain their discretion to depart or vary from the Guidelines. Certain key principles have emerged: robotic adherence to the Guidelines has been replaced by nuanced, individualized assessment, guided by the factors set out in Section 3553(a). The touchstone is reasonableness. As the Court also observed, in sentencing, a court should "consider every convicted person as an individual and every case as a unique study in the human failings that sometime mitigate, sometimes magnify, the crime and punishment to ensue." *Pepper* at 487 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

### B. Factors Warranting A Sentence of Time Served

There are a number of factors that have led Sarah to where she is today and warrant a non-incarceratory sentence. *First*, Sarah is extremely remorseful about her decision to sell prescription drugs to be used for

5

purposes other than what they were intended for. Her words, actions and conduct demonstrate acceptance of responsibility and understanding of what she was doing and how it was wrong.

*Second*, Ms. Izhaki grew up in a strict orthodox Jewish household. At the age of six, she was sent away from her home to Colegio de Senoritas de Linda Vista in Chiapas. Ms. Izhaki describes the school experience saying she was sent there to be taught to be a wife. By the time she was fourteen and near blind she was forced into a Sephardic marriage to a much older man with whom she had no connection, attraction or trust. She felt she had no choice and had this stranger's child at the young age of fourteen.

By the time she was sixteen, the situation was so unbearable that she made the decision to ask for a divorce. The terrible consequences she had feared if she did not acquiesce to the marriage in the first place came to fruition. She was rejected by her family and her father stopped speaking to her.

went to a lawyer on her own who helped her get a divorce.

Despite enduring these horrors, Ms. Izhaki was a loving and devoted mother to her daughter. While most mothers wait nine months to see the face of their child Ms. Izhaki waited years. She was fourteen when she started to go blind. Diagnosed with keratoconus, a progressive disease that distorts the shape of the cornea. Once Ms. Izhaki, who dressed her infant in bright colors so she could recognize her accidently left a park with the wrong baby. Another time, while leaving the hospital she was hit by a car while crossing the street. She pushed the stroller with her baby in it out of the way, literally putting her child's safety before her own and was badly injured. In 1995, through the Eye-Bank for sight Restoration she received the tissue and cornea transplant for free. Dr. Sandra Belmont performed the surgery and it was a success. (Exhibit A) Unfortunately, Ms. Izhaki has had to undergo numerous surgeries since and currently is legally blind.

Not only is Ms. Izhaki legally blind, she suffers from extreme pain as a result of having been hit by a car and having been in multiple serious car

---

[1]

crashes.[2] Ms. Izhaki was in two very bad car accidents, one on May 23, 2019 and another on December 25, 2020. She has had extensive surgery and medical treatment.[3] (Exhibit B) She takes numerous medications, some of which would not be available to her in prison. She goes for regular therapies to treat her conditions which would also not be available to her in prison. Additionally, Ms. Izhaki experienced a serious concussion. She suffers from memory loss and is often disoriented, depressed and anxious. Ms. Izhaki requires assistance to stand and sit.

     Currently, Ms. Izhaki is recovering from a neck surgery and once healed from that anticipates another back surgery. In short, Ms. Izhaki is frail and being in prison will be much more difficult for her even if the BOP can provide proper medical treatment, which is doubtful. This can make someone a target and particularly susceptible to vulnerability and abuse. Indeed, simply having a cellmate that refuses to sleep on the top bunk can lead to major problems for someone that cannot physically climb that high. "Extreme vulnerability of a criminal defendant is a proper ground for [downward] departure". *United States v. Lara*, 905 F. 2d 599, 603 (2d Cir. 1990); *Accord United States v. Gonzales* 946 F. 2d 525, 526 (2d Cir. 1991)

     *Third*,

     *Fourth,* Ms. Izhaki has never been in trouble with the law before. There is every reason for optimism that this experience is more than enough to deter her from ever running afoul of the law again. She is incredibly

---

[2] Ms. Izhaki has been diagnosed with Aphasia, Hemiparesis, Lumbalgia, Spondylosis, Cervicalgia, Thoracic Spine Pain, Lumbar radiculopathy, Cervical radiculopathy, Lumbar disc herniation, Cervical disc displacement, Cervical facet syndrome and Lumbar facet joint syndrome.

[3] Defense counsel have voluminous medical records that are available for the Courts inspection upon request.

embarrassed. She has suffered severe anxiety and fear at the prospect of any time in prison. She is going to have to pay back a forfeiture amount of $20,000 while her ability to work is severely impaired.

Yet, Ms. Izhaki does have a support network and as part of her reckoning and ownership of her bad decisions she came clean to many of her friends and family. They stand by her and are all willing to support her and help her continue to seek the help she needs. They speak of all the good she has done and her positive attributes as a mother and member of her Synagogue and society. (Exhibit D)

*Finally*, as our Circuit observed in *United States v. Dorvee*, 604 F.3d 84, 93 (2d Cir. 2010): "Under § 3553(a)'s 'parsimony clause,' it is the sentencing court's duty to 'impose a sentence sufficient, but not greater than necessary to comply with the specific purposes set forth' at 18 U.S.C. §3553(a)(2)"(quoting *United States v. Samas*, 561 F.3d 108, 110 (2d Cir 2009)). In the present circumstances, we submit the Court should impose a term of time served with forfeiture of $20,000 and three-years of supervised release.

## **CONCLUSION**

For the foregoing reasons, we submit that the Court should impose a jail term of time served with forfeiture of $20,000 and three-years of supervised release.

Respectfully submitted,

/s/
Richard B. Lind
Jacob B. Mitchell

cc: AUSAs (by ECF)
    U.S. Probation Officer (by email)