

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 31, 2021

**VIA ECF & E-MAIL**
The Honorable Mary Kay Vyskocil
United States District Court
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, New York 10007

    Re:   <u>United States v. Sarah Izhaki</u>, 20 Cr. 161 (MKV)

Dear Judge Vyskocil:

    Sarah Izhaki ("Izhaki" or the "defendant") profited from the black market sale and distribution of an illegal adulterated and misbranded form of erythropoietin to multiple racehorse trainers, knowing that the drugs would be used to improperly enhance the performance of racehorses. The drug Izhaki sold or offered for sale was a blood builder: a substance used to boost a racehorse's red blood cell count to stimulate its endurance during a race, and improve its post-race recovery. Izhaki sold these drugs to numerous buyers, despite the risks of harm to the receiving animal that could arise from the improper injection of these drugs by laypeople and the medical risk of an animal receiving a substance that was administered—not for any medical reason—but to compel the animal to perform beyond the animal's natural abilities. Although this was not a lucrative business for Izhaki, both Izhaki and her customers were motivated by the financial gain of artificially and improperly boosting the performance of racehorses and were indifferent to the health of the racehorses who would be receiving this drug.

## I. Procedural History

    Izhaki was indicted by a grand jury in February 2020 and arrested on March 9, 2020. Izhaki was charged in a two-count Indictment with one count of conspiring to distribute adulterated and misbranded drugs, in violation of 18 U.S.C. § 371; and one count of smuggling goods into the United States contrary to law, in violation of Title 18 U.S.C. § 545, on the basis of Izhaki's procurement of a Mexican-manufactured version of erythropoietin that was not authorized to be imported into, or sold within, the United States, but which Izhaki illicitly distributed to those in the racehorse industry. Following Izhaki's arrest, agents seized and searched Izhaki's phone and found text messages indicating that Izhaki had sold, or directed a third party to sell, dozens of vials of this misbranded and adulterated PED to racehorse trainers from February 2018 through November 2019.

Izhaki entered into a plea agreement with the Government in or about August 2020, and pleaded guilty before this Court on September 16, 2020 pursuant to that plea agreement to a one-count Information charging Izhaki with conspiring to distribute adulterated and misbranded drugs, in violation of 18 U.S.C. § 371, and including a forfeiture count for the offense. Izhaki further agreed to the entry of a consent order of forfeiture in the amount of $103,300, representing Izhaki's gain from her sales of the adulterated and misbranded blood builder drug she distributed. As set forth in the Indictment, Information, and the Presentence Investigation Report prepared by the United States Probation Department (the "PSR"), Izhaki, who is neither a veterinarian nor a pharmacist, repeatedly sold a blood builder PED obtained from Mexico to various racehorse trainers, knowing that such drugs would be used illicitly to dope racehorses. PSR ¶¶ 8-14.

## II.   The Presentence Report

The PSR calculates the defendant's adjusted offense level as 13, the criminal history category as I, and the applicable Guidelines Range as 12-18 months' imprisonment, consistent with the parties' plea agreement. PSR ¶¶ 31-35, Sentencing Recommendation at 19. Although the defendant does not have any prior convictions, she was arrested for passing a bad check in January 2017, which charge was ultimately dismissed. PSR ¶ 38. The Probation Office recommends a sentence of time served. (*See id.* Sentencing Recommendation at 19).

## III.   Defendant Submission

The defendant's submission, and the appended exhibits and letters of support, seek a non-custodial sentence from the Court. *See* Izhaki Sentencing Sub. ("Def. Mem."), Exhibits A-D.[1] Izhaki highlights, in particular, her troubled personal history, her myriad health issues, which continue to this day, and have apparently been exacerbated by multiple car accidents, and the fragile state of her mental health. Def. Mem. at 3-4, 6-7.

## IV.   Sentencing Factors

### a.   Applicable Law

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence

---

[1] A corrected and unredacted version of this submission was publicly filed at docket number 66.

disparities among defendants;" and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence to criminal conduct;
(C)  to protect the public from further crimes of the defendant; and
(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### b. Discussion

The 18 U.S.C. § 3553(a) factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to provide just punishment for the offense, to promote respect for the law, and to provide general deterrence. Under the circumstances, the Government believes that a sentence within the agreed-upon Guidelines Range of 12 to 18 months' imprisonment is appropriate here.

First, the sentence must reflect the seriousness of the offense and provide just punishment. The distribution of misbranded and adulterated drugs, without regard for the abuse of such unapproved medications, is serious and troubling behavior that risks compromising the health of the animals receiving such drugs. By design, distribution of illicit drugs, such as the type Izhaki distributed here, make it extremely difficult for law enforcement to detect and deter. And the "easy money" nature of these arrangements make it all the more likely that individuals will get involved in this type of illegal conduct, with little regard for the health risks to the general public of engaging in such offenses. Even when properly administered, repeatedly injecting unnecessary drugs into the body of a racehorse for the purpose of artificially enhancing the horse's race performance can lead to illness, injury, or death caused by overexertion. Circumventing the law to cater to the desires of racehorse trainers, who, in many cases, are acting not in the best interest of the animal, but rather to increase a racehorse's speed during races, with little regard for the stress placed on the animal, or the dangers inherent in such actions, is wrong.

Second, there is a need to promote respect for the law, and to provide general deterrence, particularly in the industry in which Izhaki operated. Many in the racehorse industry have grown indifferent to, and dismissive of, the notion of obtaining illegal drugs to dope racehorses for profit, and assume that no serious ramifications will follow if they are ever caught. The sentence the Court imposes should send a strong signal to others thinking of engaging in such criminality that there will be consequences for their crimes. The defendant's casual contemplation of doping racehorses is best exemplified by her offer to an undercover agent to procure and sell an apparently potent "masking agent" that could be used to conceal the presence of controlled substances in the body of a racehorse. The willingness of distributors like Izhaki to cater to the avarice of racehorse

trainers looking to gain a competitive edge is reason for the Court to impose a Guidelines sentence. At the time of the offense, Izhaki was under no illusions as to the nature of the drug she was providing, or how it would be abused by her buyers. A sentence without any term of imprisonment will send the message to the defendant and to others similarly situated that no real consequences flow from the distribution of tens of thousands of dollars of an illicit performance-enhancing drug.

Nevertheless, the Government acknowledges that there are certain 3553(a) factors which counsel in favor of leniency, including the defendant's unique and serious health issues, troubled upbringing, and mental health challenges. PSR ¶¶ 50-52, 54; Def. Mem. at 5-8. Moreover, Izhaki's swift and complete acceptance of responsibility for her crimes ought to be factored into the sentence that this Court fashions, given that Izhaki entered into a plea agreement only a few months after she was arrested. Izhaki's acceptance of responsibility is reflected in her statements to Probation, PSR ¶ 20, and in her sentencing submission, Def. Mem. at 5-8.

The Government agrees that these factors warrant consideration in determining the appropriate sentence. However, based on the specific facts of this case, and balancing all the 3553(a) factors, the Government believes that a sentence within the applicable Guidelines Range of 12 to 18 months' imprisonment is necessary to balance the various considerations under § 3553(a) and achieve the statute's stated objectives.

## Conclusion

The Government respectfully submits that a Guidelines sentence would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing set forth in Title 18, United States Code, Section 3553(a).

Respectfully submitted,

AUDREY STRAUSS
United States Attorney

by: ____/s/_____.
Andrew C. Adams
Sarah Mortazavi
Benet Kearney
Assistant United States Attorneys

cc: Richard B. Lind, Esq. (via ECF)
    Jacob B. Mitchell, Esq. (via ECF)